FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 21   PM 1: 23

In the District Court of the United States
For the District of Alaska

| | |
|---|---|
| Albert Dewey Sevy, ) | case number F05-0008 CV (RRB) |
| ) | |
| plaintiff, ) | plaintiff's motion for findings of fact |
| ) | and conclusions of law |
| vs. ) | |
| ) | |
| Universal Bank, n.a., et al., ) | |
| ) | |
| defendants. ) | |

Objection to the attack on this court's integrity proffered by Brenda B. Page/notice to the court of the racket that, despite a duty to assist in prosecuting, Brenda B. Page willfully aids and abets warranting this court's remand of Page to the United States Attorney for the District of Alaska for the express purpose of prosecution

Grounds for objection

Brenda B. Page, in Page's **"OPPOSITION TO "PLAINITFF'S MOTIN FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW,"** attempts to work multiple frauds on this court, to wit:

FIRST FRAUD: "the Honorable Winston S. Burbank ("Judge Burbank"). TURTH: no evidence was entered into the record to prove up Page's claim that Winston S. Burbank is a judge. This court is reminded: presuming facts not in evidence equates to a denial of due process in the best light, a confession of collusion in the worst light.

SECOND FRAUD- compound fraud: "Judge Burbank requests that the Curt deny the motion because it fails to raise any arguments that would warrant reconsideration of the Court's dismissal of the matter." TRUTH: no authenticate document was ever entered into evidence to show that Winston S. Burbank is a judge; a motion to dismiss which tenders for consideration of matters not of-record is evaluated according to the summary judgment standard requiring evidence and testimony sufficient to defeat the *prima facie* established by Albert Sevy's un-rebutted affidavit.

THIRD FRAUD: "In his pleadings, Mr. Sevy made allegations against Judge Burbank arising form a State court lawsuit in which Judge Burbank, in his official capacity as a judge, entered summary judgment adverse to Mr. Sevy." TRUTH: Again no authenticated document appears in the record to show this court that Burbank is a judge;

and regardless, judges have no official capacity to commit or aid and abet criminal acts such as are mail fraud, fraud, and extortion or to decide cases by private, prior agreement as to what the outcome of a case shall be. See *INTERNATIONAL POSTAL SUPPLY COMPANY v. BRUCE* (05/31/04) 194 U.S. 601, 48 L. Ed. 1134, 24 S. Ct. at page 609, *OLD COLONY TRUST COMPANY v. CITY SEATTLE ET AL.* (06/01/26) 271 U.S. 426, 46 S. Ct. 552, 70 L. Ed. at page 431, *United States v. Lee*, 106 U.S. 196, 220 and *Burton v. United States*, 202 U.S. 344, *IN RE AYERS.; IN RE SCOTT.; IN RE MCCABE.* 123 U.S. 443, 31 L. Ed. 216, 8 S. Ct. at page 512, Cong. Globe, 39th Cong., 1st Sess., 1758 (1866) (Sen. Trumbull). Thus, § 2 was "aimed directly at the <u>State judiciary</u>." Id., at 1155 (Rep. Eldridge). See also id., at 1778 (Sen. Johnson, member of the Senate Judiciary Committee), *BRISCOE ET AL. v. LAHUE ET AL.* (03/07/83) 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96, 51 U.S.L.W. at page 359, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974), *Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980) cert. Denied, 451 U.S. 939, 101 S. Ct. 2020, (1981), *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213 (1967), *Gregory v. Thompson,* 500 F.2d 59 (9th Cir. 1974), *United States v. Hastings,* 681 F.2d 706 at 711, n. 17 (11th Cir. 1982), *O'Shea v. Littleton,* 38 L.ed. 2d 674 at 688 (1974).

<u>"There is no judge, from the judge of the Supreme Court of the United States at Washington, to a justice of the peace in the smallest township of the state, who, acting on any judicial matter from corruption or from malice, but becomes amenable to the criminal law. See *Cooke v. Bangs,* 31 F. 640 (US Cir. Ct. Minnesota, 1887) at page 642."</u>

FOURTH FRAUD: "Mr. Sevy's motion does not present any valid basis for reconsideration of the Court's decision." TRUTH: the court presumed facts not in evidence and misapplied the law relative to F.R.Civ.P. rule 12(b)(6) *which tenders for the court's consideration of matters which are not of record.*

*One the one hand, the court had the un-rebutted testimony of Albert Sevy. On the other hand, the court had the theories and conclusions of Brenda Page commenting on matters as she believe them to be without one word of competent testimony and not one shred of authenticated evidence.*

2

Notice to the court of the high level fraud, corruption, and
cover-up of the judiciary's willful participation in the debt-buying racket

### Attorney's oath

I do solemnly swear that I will support, protect and defend the Constitution of the United States; **that I will do no falsehood, or consent that any be done in court and if I know of any I will give knowledge thereof of the judges of the court, or some one of them, that it may be reformed; <u>I will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any *false or unlawful suit*, or give aid or consent to the same</u>;** I will delay no person for lucre or malice, but will act in the office of attorney according to my best learning and discretion, with all good fidelity as well to the court as to my client, so help me God.

### How the debt buying racket works

(1). Banks make consumer loans on unilateral installment contracts of adhesion such as are credit card member agreements. (2). As the superior party in a unilateral contract cannot sue for breach of contract, the banks file insurance claims on non-performing accounts and collect insurance on the account. Although the bank still was an actionable damage in pursuing a theory of "on an open account," the matter would require: (a). subrogation to the insurer, and (b). proof via authenticated evidence and testimony of every single transaction to show a deficit; so, banks charge-off and sell evidence of debt to attorneys in the illicit business of debt buying for a typical six cents on the dollar. (3). Since installment contracts, such as are credit card contracts, are <u>not</u> negotiable instruments and cannot be sold for value under holder-in-due-course theories of law, what ever debt had inured is extinguished along with the contract itself when sold.

3

(4). Attorneys in the illicit business of debt buying then use trickery, deceit, and harassment has tools to extort sums from persons no longer subject to lawful prosecution or liable for the extinguished debt.

This court is noticed: the above scenario is a blatant violation of 18 U.S.C. §§ 1341 & 1962 often, whether unwittingly or wittingly, requiring the complicity of state court judges (and federal judges), who, due to their duty to make inquiry, reasonable under the circumstances, gain complicity in racketeer by violating 18 U.S.C. § 371 with federal judges also violating 18 U.S.C. §§ 4 & 1001.

#### Memorandum in support of the conclusion that debt buying is a substantial nationwide scam organized to serve the incredible glut of surplus lawyers

Attorney General Erases $3.5 million from Debt Purchaser's Portfolio August 19, 2005

Attorney General (West Virginia) Darrell McGraw announced today that his office has entered into a settlement agreement with Midland Credit Management, Inc. ("Midland") of San Diego, California resulting in the cancellation of more than $3.5 million in credit card debt allegedly owed by approximately 3,500 West Virginia consumers. **Midland had previously purchased the charged-off accounts for collection from Cross Country Bank of Wilmington, Delaware**.

**Attorney General McGraw's office began investigating Midland in 2004 after receiving complaints from West Virginia consumers who had been sued or contacted by Midland to collect debts originally owed to Cross Country Bank**. Cross Country Bank is a credit card bank that markets high interest credit cards to consumers

4

with bad credit histories. McGraw's office settled its lawsuit against Cross County Bank on June 21, 2005.

McGraw's office questioned the propriety of collecting the accounts based upon the same concerns that led to his lawsuit against Cross Country Bank. As a result of these concerns, the Attorney General requested that Midland close all of the accounts with a zero balance and notify credit bureaus to delete all references to the account from consumers' credit records. Midland agreed to do so in the settlement McGraw´s office announced today.

Attorney General McGraw stated, "I commend Midland for promptly doing the right thing after we brought our concerns about these accounts to its attention. As a result of our agreement with Midland, approximately 3,536 West Virginia consumers have been relieved of all further obligations to pay $3,548,539.80 in credit card debt. Because the accounts have also been deleted from credit records, consumers will no longer be denied access to new credit as a result of these accounts."

Source: Attorney General Press Release

Challenges for Collecting Purchased Debt

James M. McNeile

Cohen McNeile Pappas & Shuttleworth P.C., Leawood, Kansas

All of us know it is more difficult to collect purchased debt than originated debt by using the traditional legal collection approach. The difficulties from a lawyer's perspective lie manly in problems of proof. A creditor that originates debt has access to

5

the documentation that courts require attorneys to introduce as evidence in order to obtain a judgment. Many debt purchasers either do not have access to the source documents or can only obtain those documents at great cost. How then can debt purchasers utilize the court system to collect debts that are legally due and valid? Ken Gelhaus reports that in New York the problems of collecting on purchased debt have increased greatly in the last year. At one time in New York, court clerks entered a default judgment on claims for "sums certain" without running the papers past a judge for review and signature. In recent months, however, clerks are refusing to do so and requiring that a judge's order granting default judgment be obtained.

In one of his recent cases, Ken reports that he applied for a default judgment using the affidavit of an officer of the purchasing plaintiff. The affidavit, although able to reference the date of the purchase of the debt and the balance purchased, was deficient in that it did not include any actual business records of the originating creditor. The court found that the affidavit of the debt purchaser was insufficient and conclusory. The court suggested the debt purchaser furnish a copy of the assignment or contract assigning the claims, along with a copy of any statement or record clearly demonstrating the calculation and the amount of the claim. If monthly statements were furnished to the defendant, copies of the most recently sent statements should be annexed. Reliable and factual information concerning the claim is required.

Even if we as attorneys include such items, they are business records of the originating creditor, not the purchasing plaintiff. At least in New York, these business records would have no probative value, because no one at the purchasing plaintiff has "personal knowledge" of the creation, maintenance, issuance, and tracking of the

6

statements. In the eyes of the court, such affidavits are hearsay and therefore not admissible.

A purchasing plaintiff is unable to swear to the authenticity of the originating or source documents of a credit transaction because they do not have personal knowledge of the events which transpired at that period of time in the life of the credit agreement. The original cardholder agreement, any correspondence, and monthly statements issued by the original credit grantor are not admissible as the purchasing plaintiff's business records, as the purchasing plaintiff has no personal knowledge of how those records were created or maintained.

How then can the purchasing plaintiff's counsel obtain a judgment for their client in the face of a court's refusal to grant judgment on a legitimate debt purchased by a third-party? The obvious answer is to obtain the affidavit of the originating creditor and annex the documents of the originating creditor to their affidavit. The originating creditor would have actual and personal knowledge of the events which led to the creation of the debt, as well as the events which lead to the sale of the debt. A second alternative would be to attempt to obtain a *novation* of the original credit agreement, which might be accomplished by either obtaining a signed statement from the debtor agreeing to pay the balance owed. Alternatively, if the debtor refuses to sign such a statement, the purchaser could send monthly statements which, if not objected to by the debtor, might be introduced by way of the purchasing plaintiff's affidavit, indicating that no objection had been made to the statements of account. Therefore, the debtors are estopped from denying the existence of the balance.

7

Absent a willingness by debt sellers to sign a business records affidavit as to the origination and sale of the account, or a *novation* by the purchasing plaintiff of the original debt, lawyers will be increasingly hard pressed to obtain judgments for legitimate debts purchased by debt buyers. If purchasing plaintiffs wish to continue to be able to use the court system to enforce their purchased debt, it is going to be increasingly necessary for documentation to be readily available for their counsel and the courts.

Notice: The NARCA Newsletter is a publication of the Association of Retail Collection Attorneys with headquarters at 1620 I Street, NW Ste 615, in Washington, D.C. 20006 -- Telephone 800-633-6069 or 202-861-0706. An appearance of an advertiser in this publication does not constitute an endorsement.

ILLINOIS CREDITOR S BAR ASSOCIATION

BOARD MEETING MINUTES

APRIL 22, 2002

1.) Approval of minutes of prior meeting. Subsequent meetings are set for 5/20 and 6/17

2.) Approval of Treasurers Report

$1980 has been collected in additional membership fees. These checks have been forwarded on to William Hunter (as of 4/21/02). Treasurers report is approved.

3.) Committees

A. Membership See list for names of those who have not paid their dues.

We probably need to send out another statement to these members. It seems like a lot of fairly solid people are on the list, and it may be that these people do not realize its due now. We then need to see what is going on with these people, and at the next meeting let s set up a cutoff date.

Leigh Ann should put out a general call to remind members on the listserve. Mention in this that a statement is going out, that people need to watch for it, that they should advise us of new address. Also be sure to put on the envelopes address correction requested.

B. Education

We currently have one article from Scott Alexander for the next newsletter. Does anyone have any additional information to include?

Scott Alexander has another one or two in the hopper.

**Steve Fink will try to set up a <u>seminar for doing a discussion of claims buying</u>. Ira and Eric to discuss. We need to set up a date for this, probably in September. Not a brownbag, a longer seminar.**

C. Legislation

We are working hard on Senate Bill 39 ( Revival of Judgment) and it should go out with the committee conference report. **We have support from Lang and Silverstein. No opposition**, and it should, we hope, get passed in May.

**Homestead changes are in Rules committee, we hope it stays bottled up there**. We are not aware of anyone trying to push it, but we are watching it.

9

D. Technological: Average 300 hits a month on Website. Try to get to website and tell us what happened. SMA to send note again.

Barry Lowe to talk to Lexis about giving ICBA some sort of group deal

E. Membership. Eric Ferleger to look into finding out what would be involved in reprinting the brochure.

4.) Old business

Everything we do we should send to the Law Bulletin. **They have a column on page 3 of the paper which will print anything we send them.** They want content. Also Chicago Bar Association and Illinois State Bar News, which will also publish everything.

Consensus of opinion is that Leigh Ann should use her judgment to use the most cost effective printer

5. New business

Leigh-Ann Thompson is requesting a list of the new board members so she can distribute a press release to the appropriate newspapers and include the list in the annual directory. Here is that list, all have been added to ICBA Board Listserve. Leigh-ann, use the listserve list when sending out board mailings.

Larry Taliana President, Cindy M. Johnson : Exec. VP-SMA secretary, Bill Hunter: Treasurer, Technology: Barry Lowe, Steve Fink: Education, Membership: Eric Ferleger, Legislation: Robert Markoff, At Large: Fred Blitt, Ira Leibsker, Michael Polk, Michael Matek, Lou Freedman, Laurie Blitztein, Bruce Menkes, Ken Wake, Rob Becker, Lori Blitstein

10

The next board meeting is scheduled for Monday, May 20. Subsequent is June 17.

Minutes of the ICBA meeting of March 3, 2002

1. Our annual meeting was preceded by an exciting series of presentations and discussions between our members, and Lynn Esp, Dan Konicek, and Bruce Menkes, on topics relating to human relations and Fair debt. The excellent presentations were accompanied by dynamic discussion with our members and guests. We all enjoyed the excellent lunch, and we thank Steve Fink for having organized this successful affair.

2. Subsequently we had our meeting, in which we discussed extending the time for presentation and approval of the next board of directors and officers. The presentation will be made by e-mail to the board in approximately 10 days and then presented at our next meeting in April.

3. We heard a moving farewell from our present President Lou Freedman, and comments from our incoming president Larry Taliana. Mr. Taliana suggested that we do a seminar on office procedures and office software. Discussion ensued.

4. We decided to schedule our next two meetings for April 22, and May 20. Having previously agreed to try to have a social event in connection with our meetings every three months, it was agreed to have a get together on May 20, and Fred Blitt agreed to organize the party.

**Note: Since the ICBA is the <u>Illinois Creditors Bar Association</u>**
**<u>Since attorneys are barred from profiting from any litigation in which they are the</u>**
**<u>legal representative, # 5 is of great interest.</u>**

11

## MINUTES OF THE 10/21/02 MEETING OF THE ICBA BOARD

1. Minutes read and approved.

2. Treasurer's report: No changes from August, Figures for website maintenance discussed. Bill Hunter received bill from Leigh Anne, and this was discussed. Treasurer will take care of paying these bills, as we have now a healthy balance. A written report was distributed and the treasurer's report as a while was unanimously accepted.

3. General discussion was had regarding executive director and the services required of the position. We need bills to go out to members for dues.

4. Newsletter. We need to double check on Newsletter status, and the newsletter should have a note about past due membership dues, specifically, that after 1/31/03, past due members risk being cut off from the list serve and newsletters. There should put a case note on Dickerson case, with an active link to the case.   There are at least five articles in the hopper, which could go in the newsletter.

**5. We are suggesting a 1/20/03-projected date for the <u>debt-buying seminar</u>, and for our monthly meeting. The date is a Monday.**

6. Tech: we are getting a discount of a significant amount because we are using a new server, which is also faster.   We are looking for an offer from Lexis, but they are now

negotiating with the Illinois State Bar Assn. Offer would be about 123/month for the Illinois Library. General discussion on competing benefits of Westlaw.

We need a new president's letter on the website. There needs to be a general revamp of the website content.

7. Bylaws: continue discussion to next meeting of changes to by laws.

8. Health Insurance: general discussion. Cindy Johnson has picked up some possible agencies and will start a discussion with them. Some discussion of MSA (Medical Savings Accounts) was had.

9. Northern District is going to allow electronic filing in January for bankruptcy. It might set up a situation where you may not have written notice yet while the bankruptcy is going, although good faith ignorance would probably be a defense to stay violations. Proofs of claims could also be filed electronically. In Southern District, the tryout district, they bar paper filings for major filers. You can walk the filings in and they will put it on electronically, but won't accept mailings or fed ex, etc.

10. Legislative-- Congratulations to Mr. Markoff on success of revival
bill -- which should be prominently mentioned in the newsletter. We should put out an email regarding supporting our representatives who helped us out on the Revival legislation.

Next meetings: 11/18 and 12/16, and 1/ 21/03, with a possible social after the February meeting. 10 people attended this evening's social at Coogan's, and a good time was had by all.

**Attorney General Sues Jacksonville Agency for FDCPA Violations**

Florida Attorney General Charlie Crist filed a suit this week against Ellis Crosby & Associates, a Jacksonville, Fla.-based collections agency and its owner over allegations they repeatedly threatened consumers and imposed illegal fees for owed debts.

The agency and its owner are charged with victimizing more than 120 consumers through multiple violations of the federal Fair Debt Collection Practices Act and Florida's Consumer Collections Practices Act.

The investigation was initiated when the Attorney General's Economic Crimes Division received numerous complaints about the collections agency from the Better Business Bureau. The complaints alleged that the company was using aggressive and illegal tactics to collect on its accounts, including posing as law enforcement officers or attorneys, threatening arrest by military police and collecting illegal fees greater than the original amount owed. Several complaints even alleged that individuals with the company represented themselves as lawyers with the Attorney General's Office.

"Few words could adequately describe the appalling nature of the tactics used against these citizens," said Crist. "People facing the pressure of paying a debt should not also

14

endure fabricated threats and intimidation. The predatory nature of these actions demands our immediate attention, and the victims deserve immediate relief from these attacks."

According to the Attorney General's Office, further investigations revealed that Crosby, 27, of Ponte Vedra, specifically trained and instructed his employees to use the malicious tactics. Among the victims was Anna Massey of Jacksonville, who was contacted by an employee of Ellis Crosby claiming to have a videotape of her husband cashing a bad check. The company told Mrs. Massey that the police were on their way to her home to arrest her husband Billy. Although Mr. Massey tried to explain to the company that he was not the individual with the debt, the company continued to harass him and his wife, demanding personal identification information and immediate payment of the debt. The intimidation tactics stopped only when Mr. Massey threatened to contact authorities.

The Florida-based company also targeted victims in other states, the Attorney General's Office said. Chris Williams of Ohio was contacted by the company regarding a payday loan of $200, demanding immediate payment of $989.42. The company threatened arrest if the payment was not received, informing Ms. Williams - who was eight months pregnant at the time - that she should know "they don't give very good prenatal care in jail," according to the complaint.

To date, the Attorney General's Office said it has received more than 120 complaints about the company, and more complaints continue to come in on a regular basis. Because the company is continuing its improper practices, the Attorney General's Office said it is seeking an expedited hearing to impose an immediate temporary injunction to halt the unlawful activity.

15

The ACA International's Ethics and Professional Responsibility Committee suspended Ellis Crosby & Associates' membership earlier this month after an investigation into the agency's collections practices.

*2005-08-26*

O.S. Title 21, Chapter 19, § 554, "*Attorney Buying Evidence of Debt*-Misleading Court. Every attorney who either directly or indirectly buys or is interested in buying any evidence of debt or thing in action with intent to bring suit thereon is guilty of a misdemeanor. Any attorney who in any proceeding before any court of a justice of the peace or police judge or other inferior court in which he appears as attorney, willfully misstates any proposition or seeks to mislead the court in any matter of law is guilty of a misdemeanor and on any trial therefore the state shall only be held to prove to the court that the cause was pending, that the defendant appeared as an attorney in the action, and showing what the legal statement was, wherein it is not the law. If the defense be that the act was not willful the burden shall be on the defendant to prove that he did not know that there was error in his statement of law."

Any person guilty of falsely preparing any book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced as genuine upon any trial, proceeding or inquiry whatever, authorized by law, SHALL BE GUILTY OF A FELONY. Oklahoma Statutes Title 21. Crimes and Punishments, Chapter 13, Section 453.

The court is especially noticed of the following information gleaned from
http://wwde.com/whatsnew.htm

**March 23, 2005:** WDX currently has 8 portfolios for sale.  Check out the **Current Sales** section of the website or log into the trading software for more details!

**February 8 - 10, 2005:** 8th Annual Debt Buyers' Association Conference - The Mirage Casino-Hotel, Las Vegas, NV - *WDX will be an exhibitor along with Oliphant Financial Corp.*

**October 20 - 22, 2004:** 13th Annual Credit Card Collections Conference - JW Marriott Desert Ridge Resort & Spa, Phoenix, AZ

**June 13 - 15, 2004:** Subprime Lending Symposium - InterContinental Mark Hopkins, San Francisco, CA

**May 5 - 7, 2004:** 16th Annual Card Forum & Expo - Renaissance Orlando Resort Seaworld, Orlando, FL

**March 17 - 19, 2004:** 8th Annual National Collections & Credit Risk - New Orleans Marriott, New Orleans, LA

**March 7 - 9, 2004:** 9th Annual Best Practices in Retail Financial Services Symposium - The Registry Resort and Club, Naples, FL

**February 4 - 6, 2004:** Debt Buyers' Association 7th Annual Debt Buyers Conference - Caesars Palace, Las Vegas - *WDX will be an exhibitor along with Oliphant Financial Corp.*

**October 23-25, 2003:** NARCA 2003 Fall Collection Conference - Coronado Springs Resort, Orlando, FL

**Oct. 23-24, 2003:** 8th Annual Small Business Banking Conference - Baltimore Marriott Waterfront Hotel, Baltimore, MD

**Oct. 15-17, 2003:** 12th Annual Credit Card Collections Conference - JW Marriott Orlando Grande Lakes Resort, Orlando, FL - **WDX will be an exhibitor along with Oliphant Financial Corp.**

**July 31, 2003:** *WDX sells $87.5MM in consumer receivables!*

**July 11, 2003:** *WDX sells $252MM in consumer receivables within 2 days of posting!*

**June 20, 2003:** *WDX Posts $27MM Check Portfolio!*

**May 18-20, 2003:** 15th Annual Card Forum & Expo - New Orleans Marriott, New Orleans, LA

**May 15-17, 2003:** NARCA Spring Collection Conference - Fairmont Hotel, New Orleans, LA

**April 2, 2003:** *WDX shows a 30% increase in activity in Q1!*

**March 9-11, 2003:** 7th Annual National Collections & Credit Risk Conference - Venetian Las Vegas

**March 2-4, 2003:** Best Practices in Retail Financial Services Symposium - Hyatt Regency, Coconut Point Resort & Spa - Bonita Springs, FL

**Feb. 9-11, 2003:** 6th Annual Debt Buyers Conference - Caesars Palace, Las Vegas

**Nov. 2002:** National Association of Subrogation Professionals - Tampa, FL

**Nov. 14-17, 2002:** CLLA 82nd Annual New York Conference - Sheraton Hotel, New York.

**Oct. 24-26, 2002:** NARCA Fall Collection Conference - Westin Bayshore Resort and Marina in Vancouver, BC

**Oct. 24-25, 2002:** 7th Annual Small Business Banking Conference - Chicago Marriott Downtown

**Oct. 15-17, 2002:** 11th Annual Credit Card Collections Conference (Thomson Financial) at New Orleans Marriott

**Oct. 13-15, 2002:** Equipment Leasing Association 41st Annual Convention - San Francisco Marriott
**Sept. 18-20, 2002:** Collection and Recovery Solutions 2003 - Four Seasons Las Vegas (by invitation only)

**June 12, 2002:** 5th Annual Debt Sales Forum to be held June 12-13, 2003 at the Renaissance Washington DC Hotel in Washington, DC

**June 5, 2002:** NARCA's Spring Collection Conference to be held June 5-8, 2003 at the Grand Hyatt Washington Hotel in Washington, DC

**March 10, 2002:** Collections & Credit Risk Conference held March 10-12, 2003 at the Marriott Hotel in New Orleans, LA

**Feb 01, 2002:** Debt Buyers' Association 5th Annual Conference held February 6-8, 2003 at the Paris Las Vegas Hotel and Casino in Las Vegas, NV

**Jan 24, 2002:** WDX launches a new web site offering more information and opportunity to receive updates!

**Jan 22, 2002:** New Credit Card Chargeoffs Sales Totaling $158,556,000:

Credit Cards - $30,548,000
2 & 3 Agency / 9,125 accounts

Avg. chargeoff date – 1/21/00
Avg. last payment date – 9/9/99
Avg. balance - $3,348

Credit Cards - $128,008,000
4 Agency / 39,518 accounts
Avg. chargeoff date – 1/13/96
Avg. last payment date – 7/31/95
Avg. balance - $3,239
National or state-by-state availability

**Jan 18, 2002:** WorldWide Debt Exchange announces the new release of its Internet based debt trading software. Release scheduled for February 6, 2003 to be launched at this years Debt Buyers' Association Conference.

**Jan 1, 2002:** Robert A. Morris, founder of Oliphant Financial Corporation and the WorldWide Debt Exchange to be named new President of the Debt Buyers' Association at the annual conference in February.

## Conclusion

The business of attorneys buying charged-off debt has a major racket in America due to complicity of parties such as Winston S. Burbank, Brenda Page, and this court if this court breaches the duties found at 28 U.S.C § 453 and 18 U.S.C. § 4.

This court has a non-discretionary duty to reinstate this instant case and remand all defendants and their attorneys to the United States Attorney for the district of Alaska for a grand jury's determination of whether there is probably cause to indict Winston S. Burbank et al for felony crimes occurring at 18 U.S.C. § 371, 1341, 1961 & 1962. *"Ignorance of the law is no excuse!"*

Prepared and submitted by: _____  20 Dec 05
                                    Albert Dewey Sevy

19

Certificate of mailing

I, Albert Dewey Sevy,  certify that December 20, 2005, I mailed a true and correct copy
of the above and foregoing brief in opposition to: (names and addresses of all attorneys
who have entered and appearance)

Albert Dewey Sevy

Copy to:

David W. Márquez
P.O. Box 110300
Juneau, AK 99811-0300

**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

DEC 2 0 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deputy

Albert Dewey Sevy    v.    UNIVERSAL BANK, N.A. et al

THE HONORABLE RALPH R. BEISTLINE

DEPUTY CLERK                    CASE NO.   F05-0008CV(RRB)

CAROLYN BOLLMAN

---

PROCEEDINGS: **MINUTE ORDER FROM CHAMBERS**    DATE: December 20, 2005

═══════════════════════════════════════════════════════════════

On October 24, 2005 this Court entered its Order
Granting Defendants' Motion to Dismiss (docket 27).  Plaintiff
subsequently filed a document entitled "plaintiff's motion for
findings of fact and conclusions of law."  In an abundance of
caution and noting plaintiff's pro se status, the Court treated
this motion as a motion for reconsideration and permitted the
Defendants an opportunity to respond.  The Court has now received
and considered Defendants' responses and finds them well taken.
The Court has also again reviewed its decision on October 24th
and finds that it too accurately sets forth the relevant law.
There is simply no legal or factual basis for the claims brought
by Plaintiff against the Defendants dismissed here from.  In
fact, the claims border on frivolous.  Therefore, for the reasons
set forth in its original Order of Dismissal as well as for the
reasons included in the parties subsequent pleadings, the Court
Hereby Reaffirms its Order of Dismissal filed October 24, 2005.

F05-0008--CV (RRB)
S. JONES
A. SEVY
B. PAGE (AAG-200)